UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WALTER L. MCINTOSH and
DANIEL W. DUMONT,

                      Plaintiffs,

     v.                                   3:10-cv-886

MORGAN & STANLEY, et al.,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## **DECISION and ORDER**

Plaintiffs commenced the instant action against Defendants arising out of the alleged mishandling of certain financial accounts. Presently before the Court is Defendant Morgan Stanley's motion to compel arbitration.

## I.    FACTS

In 2002, Plaintiff Walter McIntosh opened an account with Morgan Stanley. Upon opening this account, McIntosh signed a Morgan Stanely IRA Adoption Agreement that stated, in bold letters:

> I understand that this account is governed by a predispute arbitration clause which is set forth in Section 7.4 of the IRA document. I acknowledge receiving a copy of the predispute arbitration clause.

The "Disclosure Statement Morgan Stanley IRA" further provides that "[c]ontroversies arising in connection with your IRA are subject to arbitration under Section 7.4 of the Plan. Please see Section 7.4 for details." Section 7.4 of the Plan reads as follows:

> (b) Arbitration of Controversies. The participant agrees that all controversies between the Participant or the Participant's Beneficiary, principals or agents and Morgan Stanley or its agents (including affiliated corporations) arising out of or concerning any of the Participant's accounts, orders or transactions, or the construction, performance or breach of this or any other agreement between the Participant and Morgan Stanley, whether entered into before or after the date an account is opened, shall be determined by arbitration only before the New York Stock Exchange, Inc.; the National Association of Securities Dealers, Inc.; or the Municipal Securities Rulemaking Board, as the Participant may elect. . . . The law of the State of New York will apply in all respects, including but not limited to determination of applicable statutes of limitation and available remedies.

McIntosh also signed the "Morgan Stanley Choice Client Service Agreement," in which he agreed

> that all controversies between you or your principals or agents and Morgan Stanley or its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction, performance, or breach of this or any other agreement between us, whether entered into before or after the date an account is opened, shall be determined by arbitration only. . . .

In 2005, Plaintiff Daniel Dumont opened an account with Morgan Stanley. Upon opening the account, Dumont signed the "Active Assets Account Application." That document stated that:

> You understand that the Account is governed by the predispute arbitration clause located at pages 19 and 20 of the Active Assets Account Client Agreement. You acknowledge that you have received a copy of the Agreement, including the predispute arbitration clause. . . .

"The Active Assets Account Client Agreement" provides, in pertinent part, as follows:

> This Agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:
>
> a. All parties to this Agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed. . . .
>
> You*** agree that all controversies between you and your principals or agents and Morgan Stanley or any of its agents (including affiliated corporations) arising out of or concerning any of your accounts, orders or transactions, or the construction,

> performance, or breath of this or any other agreement between the parties, whether entered into before or after the date the Account is opened, shall be determined by arbitration only. . . .

In the "MoganStanely Choice Disclosures and Client Services Agreement," Dumont further agreed that:

> all controversies between you or your principals or agents and Morgan Stanley or its agents (including affiliated corporations) arising out of or concerning any of your account, orders or transactions, or the construction, performance or breach of this or any other agreement between the parties, whether entered into before or after the date the Account is opened, shall be determined by arbitration only. . .

Plaintiffs maintained their accounts with Morgan Stanley through approximately August 2006.

## II.     DISCUSSION

Defendant Morgan Stanley moves to compel arbitration of Plaintiffs' claims. As the Second Circuit has explained:

> § 2 of the FAA [Federal Arbitration Act] provides, in essence, that in any contract evidencing a transaction involving interstate commerce, a written provision agreeing to submit to arbitration a controversy arising out of the contract or transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. FAA §§ 3 and 4 provide generally that if an action is brought in federal court on an issue that is referable to arbitration under such an agreement, the court, upon a timely motion by a proper party, is to stay the action until completion of arbitration in accordance with the terms of the agreement, see id. § 3, and is to order that "arbitration proceed in the manner provided for in such agreement," id. § 4. See generally Stolt-Nielsen S.A. v. AnimalFeeds International Corp., --- U.S. ----, ---- -----, 130 S. Ct. 1758, 1773-75, 176 L. Ed.2d 605 (2010) ("Stolt-Nielsen"). Congress' purpose in enacting the FAA was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.

Fensterstock v. Education Finance Partners, 611 F.3d 124, 132 (2d Cir. 2010) (internal quotations omitted).

The Second Circuit has further explained that:

> A court asked to stay proceedings pending arbitration must resolve four issues: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the balance of the proceedings pending arbitration.

Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 75-76 (2d Cir. 1998).

Through the submission of the above-referenced documents signed by Plaintiffs, Morgan Stanely has satisfied its burden of demonstrating the existence of an arbitration agreement that covers the instant dispute. Indeed, in their opposition papers, Plaintiffs admit that they signed contracts with the predispute arbitration clauses. Even considering Plaintiff's untimely opposition to the motion to stay, they have failed to articulate any reason why the arbitration clause is not valid, does not cover the instant dispute, or is otherwise not enforceable. Similarly, although Plaintiffs assert some violations of the antitrust laws, they have not demonstrated that such claims are nonarbitrable. See JLM Industries, Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 175 (2d Cir. 2004); see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3345 (1985); Oldroyd, 134 F.3 at 77-78.

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion to stay this action and compel arbitration is GRANTED.

IT IS SO ORDERED.

Dated:    November 19, 2010

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge